UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMER FAWAZ,

                Petitioner,               Case Number 09-14965
                                              Honorable David M. Lawson

v.

HUGH WOLFENBARGER,

                Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Samer Fawaz, a prisoner in the custody of the Michigan Department of Corrections, has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his conviction for second-degree murder, Mich. Comp. Laws § 750.317.  He was charged originally with first-degree murder for causing the death of a business associate, whose body was never found.  The petitioner argues that the trial court erred in admitting evidence of a mortgage fraud investigation involving the petitioner and the victim; the trial court improperly instructed the jury on the necessarily included lesser offense of second-degree murder; the prosecutor improperly commented on the petitioner's failure to testify and his failure to present an adequate defense; the trial court erred in denying a motion to quash the information; the trial court erred in denying a motion for a directed verdict; the trial court improperly admitted evidence as to cause of death when it was based upon speculation; the trial court improperly relied upon facts not admitted by the petitioner or determined by a jury in sentencing the petitioner; trial counsel was ineffective for a variety of reasons; and appellate counsel was ineffective.  The respondent has filed an answer to the petition contending that it should be denied because the claims lack merit and some

of the claims were not preserved properly in state court. The Court finds that the petitioner's claims lack merit and therefore will deny the petition.

I.

The petitioner was found guilty of second-degree murder following a jury trial in the Macomb County, Michigan circuit court. The petitioner, along with a co-defendant, Bashar Farraj, was convicted of the murder of Raed Al-Farah, who went missing in October 2003 and whose body has never been recovered. The petitioner contends that Al-Farah is still alive.

The petitioner filed a motion before trial to quash the information charging him with first-degree murder. The trial court denied the motion, finding that the magistrate did not abuse his discretion in determining that there was sufficient evidence to bind the petitioner and his co-defendant over for trial. *People v. Fawaz*, No. 2004-0439-FC (Macomb Cnty. Cir. Ct. June 23, 2004). The Michigan Court of Appeals denied the petitioner leave to appeal. *People v. Fawaz*, No. 256648 (Mich. Ct. App. Aug. 13, 2004).

Nayef Al-Farah, Raed's father, testified that when Raed first arrived in the United States from Jordan, he lived with his uncle, Osama Al-Farah, but that Raed moved to an apartment with a roommate while attending Wayne State University. Osama Al-Farah testified that although Raed no longer lived with him, the two were in weekly contact. Osama telephoned Raed several times on October 17, 2003. Raed did not return the calls, which was unlike him. On October 20, 2003, Osama became concerned and called Raed's friends. Raed's roommate, Tawfiq Karadsheh, also tried to contact Raed, but was unable to do so. Karadsheh found that none of Raed's belongings were missing from the apartment they shared. Also on October 20, 2003, Osama obtained Raed's class schedule and went to campus in an attempt to locate Raed. Raed was not in any of his

-2-

classrooms.  Late that evening, Osama filed a missing person report with the Madison Heights Police Department.  He also hired a private investigator later in the week.  Osama obtained a copy of Raed's most recent monthly bill for his cell phone.  The bill showed that the last call received or made using the cell phone was on October 16, 2003 at 10:50 p.m.; however, Osama testified that some time after October 16, 2003, the voicemail greeting on Raed's cell phone changed.  Jennifer DiNello testified that she had seen Raed on the evening of October 16, 2003 at a nightclub that they both frequented, but that she had not seen him since that date.  Nayef Al-Farah testified that when he became aware that his son was missing, he flew from his home in Jordan to the United States. He hired two private investigators, enlisted help from the local Jordanian community, and offered a reward, but was unsuccessful in locating his son.

Nayaf and Osama Al-Farah both testified that Raed was involved in real estate transactions with Fawaz and Farraj.  Osama testified that when he went through Raed's things, he found paperwork on four or five real estate transactions.  Osama also knew that Raed was being investigated by the FBI, although he did not know the subject of the investigation.  Osama testified that Raed took Farraj's car, a black Trailblazer, on a trip to New York and Pennsylvania.  Special Agent Theodore Peissig of the FBI testified that in the spring of 2003, the FBI was investigating the petitioner, Farraj, and Raed Al-Farah for mortgage fraud.  He also testified that in connection with that investigation, he observed several individuals, not including the petitioner, engaged in a transaction at a bank.  The FBI seized some checks in connection with that transaction.

Marlin Rayes testified that in October 2003, she was employed as a receptionist at Michigan Mortgage Center in Sterling Heights, Michigan.  Her husband, Eddie Rayes, also worked there as a loan officer.  The petitioner was employed as a loan processor and his co-defendant Bashar Farraj

as a loan officer.  When Marlin arrived for work on October 16, 2003, she found on the floor of her office a box for a sleeping bag, plastic wrap, plastic bags, and packaging for a kitchen knife.  Marlin saw a white plastic bag in the box that bore a few spots of blood.  When Farraj entered her office, Marlin asked him about the blood and he showed her a small scratch on his arm.  When Marlin left her office at the end of the day, the box was still there.

Eddie dropped Marlin off for work the next morning, October 17, 2003, at approximately 9:15 a.m., and left to change the oil in his car.  Farraj's black Trailblazer was parked outside the office.  Marlin saw the petitioner and Farraj standing just inside the front door of the office.  She testified that it was unusual for the petitioner and Farraj to be at the office so early.  When she entered the building, she immediately smelled vomit and noticed that the office was messy, there were red stains and vomit stains on the carpet, doormat and the hallway in front of her office, the glass door was smudged, and a chair in the foyer was stained.  The wall in the hallway leading from the foyer to her office had two holes in it.  Marlin testified that either the petitioner or Farraj told her that a customer had spilled cranberry juice on the floor.  She did not believe the area had been very well cleaned, so she cleaned the door with Windex, vacuumed, and poured water on a cement area that also appeared to be stained.  The petitioner and Farraj purchased new mats and replaced the front doormat.  Either the petitioner or Farraj taped a piece of paper over the holes in the wall.  They left the office around noon.

Initially, Marlin believed the cranberry juice story.  Eventually, however, she became skeptical.  She took a piece of paper, dipped it on the carpet and thought the stain looked like blood, not cranberry juice.  Marlin called her husband and asked him to return to the office and called the business owner, Michael Mackie, to tell him what she had seen.  Marlin's husband, Eddie Rayes,

-4-

testified that he observed the same staining and holes in the wall that Marlin had observed. He contacted the Sterling Heights Chief of Police. Mackie closed the office and changed the locks that afternoon.

On November 3, 2003, Officer James Wisniewski, an evidence technician, assisted in executing a search warrant at Michigan Mortgage. Officer Wisniewski removed carpeting with stains that appeared to be blood from the foyer. He also removed a larger portion of the carpet that appeared to be stained with blood from the hallway. Officer Wisniewski removed the seat cushion from a chair in the front portion of the office because the cushion appeared to be stained with blood. He performed a phenolphthalein test on the foyer carpet and the seat cushion; each tested positive for the presence of blood. Officer Davide Guerra, another evidence technician, tested a portion of the hallway wall to determine if any blood had been cleaned from the wall. The hallway wall tested positive for blood. Officer Guerra seized the vacuum cleaner Marlin had used.

Dr. Werner Spitz, Macomb County's medical examiner in 2003, testified as an expert in forensic pathology. Dr. Spitz testified that he visited Michigan Mortgage on November 19, 2003 and reviewed evidence collected from the office. Based upon his review of the office and the evidence collected, Dr. Spitz determined that a serious fight involving injuries to the victim's head occurred in the office. He believed the victim lost approximately one-and-a-half pints of blood and died from blood loss and a brain injury. Dr. Spitz also testified that the majority of people who die of exsanguination lose about three pints of blood.

On November 20, 2003, Officer Wisniewski examined a 2002 Trailblazer belonging to Farraj. He noticed that the carpeting in the back of the car was missing and appeared to have been cut out. He also noticed stains that may have been blood on some of the remaining carpeting.

Officer Wisniewski seized a power cord from the car's wheel well that appeared to have some stains on it. Detective James Spence stated that at least one of the stains on the carpeting tested positive for blood. The petitioner's vehicle also was examined, but it yielded no evidence.

Jennifer Andrew testified as an expert in DNA analysis. Andrew was employed as a forensic DNA analyst by the Michigan State Police in 2003. She analyzed samples from blood-stained carpet taken from the mortgage office, a power cord recovered from the Trailblazer, and debris from a vacuum seized from the mortgage office. From those samples, she was able to retrieve sufficient DNA to create a DNA profile. Andrew also analyzed swab samples from Raed's parents and from a toothbrush recovered from his apartment. Andrew concluded that the DNA recovered from the toothbrush matched the DNA recovered from the blood-stained carpet and that the DNA profile from the carpet, vacuum, and power cord all came from the same person. Andrew recommended that a more specialized expert be retained to perform a reverse paternity analysis of the samples to determine if the user of the toothbrush could be the biological child of Hiam and Nayef Al-Farah.

Dr. Marco Scarpetta testified as an expert in reverse paternity analysis. He determined that the DNA obtained from the toothbrush and the blood-stained carpet was consistent with the profile of a person who was the child of Hiam and Nayef Al-Farah. The odds that the DNA from the blood-stained carpet did not come from a child of Hiam and Nayef were 195 billion to one.

Officer Kevin Deroy testified that he found a movie ticket in the petitioner's jacket for a movie at 10:00 p.m. on October 16, 2003. The tickets indicated that it had been purchased at 10:03 p.m.. There was no blood found on the jacket with the ticket stub in it.

At the conclusion of the prosecution's case, counsel for the petitioner moved for a mistrial based on Special Agent Theodore Peissig's testimony as to the mortgage fraud investigation of the

petitioner.  The trial court denied the motion for a mistrial, finding that the evidence was relevant to motive.  Counsel for the petitioner then moved for a directed verdict.  He argued that there was no evidence that the petitioner or his co-defendant killed Raef Al-Farah, were present at the office at any time relevant to the crime, engaged in premeditation or deliberation, or conspired together. The trial court denied the motion, adopting its opinion on the motion to quash.

The defense presented testimony from Fatima Tsouli, a waitress at a café that Raed Al-Farah frequented.  Tsouli testified that she saw Al-Farah after October 20, 2003.  She stated that she recognized his tattoo from missing person posters.   She did not contact the police or the prosecutor; she contacted petitioner's trial counsel about three weeks prior to the trial.  Rasheb Bazzy, the owner of the café, testified that he believed that he saw Al-Farah on another occasion after he went missing, but that he could not be certain.  He contacted the police, but by the time they arrived, Al-Farah had left.

The defense also presented expert testimony from Dr. Ljubisa Dragovic, the chief medical examiner of Oakland County, who testified that based on his examination of the scene it was possible that the person who was injured had survived.  He testified that based solely on the amount of blood loss shown at the scene, it was unlikely that the individual had died from exsanguination, but it was possible that the individual had sustained a closed head injury.

The petitioner was convicted of second-degree murder and sentenced to twenty to fifty years in prison.  Following his conviction and sentencing, the petitioner filed a direct appeal in the Michigan Court of Appeals raising most of the issues presented in this case.  The Michigan Court of Appeals affirmed the petitioner's conviction.  *People v. Fawaz*, No. 264703, 2007 WL 861104

(Mich. Ct. App. March 22, 2007). The Michigan Supreme Court denied leave to appeal. *People v. Fawaz*, 480 Mich. 860, 737 N.W.2d 708 (2007).

The petitioner then filed a motion for relief from judgment in the trial court, arguing that trial counsel was ineffective by failing to present an alibi defense, failing to object to the jury instructions and verdict form, failing to object to improper opinion testimony from Osama Farah and Detective Thomas McMullen, and failing to object to inappropriate rebuttal testimony. The trial court denied the motion finding that the claims lacked merit. *People v. Fawaz*, No. 2004-0439-FC (Macomb Cnty. Cir. Ct. Nov. 13, 2008). The petitioner's state court appeals were rejected. *People v. Fawaz*, No. 290065 (Mich. Ct. App. March 20, 2009); *People v. Fawaz*, 485 Mich. 893, 772 N.W.2d 359 (2009).

The petition for a writ of habeas corpus raises the following issues:

I.      The trial court erred when it allowed evidence of a mortgage fraud investigation, over petitioner's continued objection, where the [state] had no evidence of Fawaz's involvement, never presented any evidence of its relevance to motive as they argued, and was more prejudicial than probative.

II.     The trial court erred when, over the defense objection, it instructed the jury on the necessarily included offense of murder second degree.

III.    Reversible error occurred when the prosecutor in comments during trial impliedly commented on both the petitioner's failure to testify and his failure to present an adequate defense.

IV.     The trial court abused its discretion when it denied Fawaz's motion to quash the information based on a lack of probable cause that Fawaz committed the charged crimes.

V.      The trial court erred when it denied Fawaz's motion for directed verdict.

VI.     The trial court erred when it allowed, over the defense objection, Dr. Werner Spitz to testify as to the cause of death when his opinion was nothing more than speculation, and did not meet the foundational requirements for admissibility under MRE 702.

-8-

VII.   Petitioner was sentenced contrary to his Sixth and Fourteenth Amendment rights under the United States Constitution to have a jury determine, beyond a reasonable doubt, all facts considered for sentencing.

VIII.   Several instances of ineffective assistance of counsel denied Mr. Fawaz his constitutional right to a fair trial under both state and federal constitutions.

    A.    Defense counsel deprived petitioner of a substantial defense by failing to timely file notice of alibi and properly raise the defense.

    B.    Counsel's failure to investigate and call known potential alibi witness constitutes deficient performance and deprived Petitioner of a substantial defense.

    C.    Defense counsel failed to object to or conceded to the court's erroneous jury instruction and verdict form which did not allow the jury the option of finding petitioner generally not guilty of the lesser included offense of second-degree murder.

    D.    Defense counsel failed to object to the improper opinion testimony of Osama Al-Farah which deprived petitioner of a fair trial and the right to have the jury determine his guilt uninfluenced by opinions of Osama Al-Farah and investigators he hired.

    E.    Defense counsel failed to object to the improper opinion testimony of Detective McMullen which deprived petitioner of a fair trial and the right to have the jury determine credibility of his investigator uninfluenced by opinions of the prosecution's chief investigative officer.

    F.    Defense counsel failed to object to the prosecution's rebuttal evidence which concerned a collateral issue and was introduced to put before the jury the expert opinion of Detective McMullen.

IX.   Petitioner has met the burden of establishing entitlement to relief and the case should be heard on its merits because (a) petitioner was denied the effective assistance of appellate counsel on appeal and he was prejudiced by that deficient performance; (b) petitioner is actually innocent; and (c) it would result in a fundamental miscarriage of justice not to address these claims.

Pet. at vii-x.  The respondent filed an answer contesting the merits of the petitioner's claims and arguing that the petitioner's third, seventh, and eighth claims were not presented properly in state court.  The respondent also argues that the petitioner has abandoned his first, second, fourth, and fifth claims.

The petitioner raises a number of claims that he apparently believes are subject to the defense of procedural default.  According to the petitioner, he raises these claims in order to demonstrate the ineffectiveness of his appellate counsel.  The Court does not find it necessary to address the question of procedural default.  It is not a jurisdictional bar to a review of the merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir.2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  Application of a procedural bar would not affect the outcome of this case, and it is more efficient to proceed directly to the merits.  Moreover, the Court will consider both the merits of those claims that the petitioner raises and their possible application to the petitioner's claim of ineffective assistance of appellate counsel.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104–132, 110 Stat. 1214 (April 24, 1996), which govern this case, circumscribe the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  As amended by AEDPA, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved

-10-

an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court

-11-

has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its unanimous decision two terms ago in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Sixth Circuit observed recently that "[t]his is a very high standard, which the [Supreme] Court freely acknowledges." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012). The *Peak* court suggested that *Richter* holds that the review standard "is even more constricted than AEDPA's plain language already suggests." *Ibid.*

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state court rulings, and demands that state court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, ---, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures

-12-

to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Peak*, 673 F.3d at 473-74; *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011).

## A.

In his first habeas claim, the petitioner argues that the trial court erred by admitting testimony of a mortgage fraud investigation where there was no evidence of the petitioner's involvement and it was irrelevant to motive. He also contends that his appellate counsel was ineffective by failing to raise the claim as a federal constitutional issue. The Michigan Court of Appeals considered the plaintiff's argument solely as an evidentiary issue and rejected it, writing:

> Defendant first argues that the trial court erroneously admitted other-acts evidence testimony from Special Agent Peissig regarding the FBI's mortgage fraud investigation into the victim, defendant, and Farraj. In general, this Court reviews a trial court's decision regarding the admissibility of other-acts evidence for an abuse of discretion. *People v. Crawford*, 458 Mich. 376, 383; 582 N.W.2d 785 (1998). The abuse of discretion standard is deferential and acknowledges that there is no single correct outcome; rather, there are multiple reasoned and principled outcomes. When a trial court chooses one of these principled outcomes, it does not abuse its discretion. *People v. Babcock*, 469 Mich. 247, 269; 666 N.W.2d 231 (2003).
>
> To be admissible under MRE 404(b), other acts evidence generally must satisfy three requirements: (1) it must be offered for a proper purpose, (2) it must be relevant, and (3) its probative value must not be substantially outweighed by its potential for unfair prejudice. *People v. Knox*, 469 Mich. 502, 509; 674 N.W.2d 366 (2004). Our review of the testimony provided by Special Agent Peissig at trial demonstrates that it was offered for a proper purpose. His testimony revealed only that . . . the FBI was

-13-

investigating defendant, Farraj, and the victim for mortgage fraud, and that he had seen Farraj and the victim together during a bank transaction that was part of the investigation. The testimony was proper to show a possible motive for the victim's murder. Also, the challenged testimony was relevant because "proof of motive in a prosecution for murder, although not essential, is always relevant [.]" *People v. Rice*, 235 Mich. App 429, 440; 597 N.W.2d 843 (1999).

Further, defendant failed to establish that the disputed evidence should have been excluded under the balance test of MRE 403. Unfair prejudice exists when there is a tendency that the evidence will be given undue or preemptive weight by the trier of fact. *People v. McGuffey*, 251 Mich. App 155, 163; 649 N.W.2d 801 (2002). The determination of whether the probative value of evidence is substantially outweighed by its prejudicial effect is "best left to a contemporaneous assessment of the presentation, credibility, and effect of the testimony." *People v. Magyar*, 250 Mich. App 408, 415-416; 648 N.W.2d 215 (2002). While the other acts evidence in issue may be viewed as prejudicial, in light of the weight of the evidence presented against defendants, and the fact that the record does not establish that it was given preemptive or undue weight, it cannot be characterized as unfair. *See People v. Starr*, 457 Mich. 490, 500; 577 N.W.2d 673 (1998). Accordingly, defendant failed to establish error based on the inclusion of the other acts evidence.

*People v. Fawaz*, No. 264703, 2007 WL 861104, at *1.

"[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996). The Supreme Court has declined to hold that the admission of "other acts" evidence is so extremely unfair that it violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990). The Supreme Court has addressed whether other acts testimony is permissible under the Federal Rules of Evidence, see *Huddleston v. United States*, 485 U.S. 681 (1988), but it has not addressed the issue in constitutional terms. Such matters are more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. *Dowling*, 493 U.S. at 352. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in

-14-

the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Consequently, there is no "clearly established federal law" to which the state court's decision could

be "contrary" within the meaning of section 2254(d)(1). *Id*. at 513. Therefore, even assuming that

the state court's determination that the evidence was relevant to motive was erroneous, the Court

must deny relief on this claim.

B.

The petitioner next argues that the trial court erred when it instructed the jury on the lesser

offense of second-degree murder and that appellate counsel was ineffective by failing to "federalize"

the issue. The Michigan Court of Appeals held that the instruction was proper under Michigan law:

> Defendant argues that the trial court erred when it instructed the jury on the necessarily included offense of second-degree murder because defendant's trial strategy was an all or nothing campaign. . . .
>
> The trial court has a duty to instruct the jury on the applicable law. MCL 768.29. An instruction on second-degree murder as a necessarily lesser included offense of first-degree murder is proper "if the intent element differentiating the two offenses is disputed and the evidence would support a conviction of second-degree murder." *People v. Cornell*, 466 Mich. 335, 358 n.13; 646 N.W.2d 127 (2002). First-degree murder is second-degree murder with the added element of premeditation or the perpetration or attempted perpetration of an enumerated felony. *People v. Carter*, 395 Mich. 434, 437; 236 N.W.2d 500 (1975).
>
> A review of the record reveals that the intent element differentiating first-and second-degree murder was at issue at trial. Although defendant's defense was that he was not involved in the alleged murder of the victim, a second-degree murder instruction was supported by a rational view of the evidence adduced at trial. The jury could have discounted the testimony about the sleeping bag box and knife packaging seen at Michigan Mortgage the day before the disappearance and found, that rather than killing the victim according to a premeditated plan, defendant and Farraj spontaneously killed the victim. The trial court properly decided to instruct the jury on second-degree murder, and therefore, defendant is not entitled to relief on this issue.

*People v. Fawaz*, No. 264703, 2007 WL 861104, at *2.

-15-

Generally, challenges to jury instructions are not cognizable on federal habeas review unless the instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citation and quotation marks omitted). It is not enough to show that an instruction was incorrect under state law. *Id*. at 71-72. "To warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." *Doan v. Carter*, 548 F.3d 449, 455 (6th Cir. 2008) (citations omitted). "When a court makes an error in instructing the jury, the proper inquiry is 'whether there is a reasonable likelihood that the jury' applied the instruction 'in an unconstitutional manner.'" *Id*. at 455 (quoting *Victor v. Nebraska*, 511 U.S. 1, 6 (1994)). The petitioner has not demonstrated that the challenged instruction was incorrect under state law, much less that it rendered the entire trial fundamentally unfair. The state appellate court's treatment of this issue did not contravene or unreasonably apply federal law.

C.

In his third claim for habeas corpus relief, the petitioner argues that the prosecutor committed misconduct by commenting on the petitioner's failure to testify and his failure to present an adequate defense. The petitioner cites the following statement made in closing argument as evidence of the prosecutor's misconduct:

> On October 17, 2003, the defendants, Basher Farraj and Samer Fawaz killed, murdered and conspired to murder, to commit first-degree murder against Raed Al-Farah. That is what the evidence has shown so far and I will go through that and tell you. . . .

> [O]ne hit, incapacitating brain injury. And that is what killed Raed Al-Farah. And that was done by the defendants.

Trial Tr., June 22, 2005, at 11, 25.

-16-

The petitioner argues that the prosecutor's argument was designed to "bait" him into foregoing his Fifth Amendment right to remain silent and his Sixth Amendment right to present a defense. The petitioner raised this claim on direct review, but pointed to a different section of the transcript:

| | |
|---|---|
| Co-Defendant's Counsel: | And I am sure that whatever the Detroit police evidence tech found we are going to hear later in this trial, would that be correct? |
| Officer Wisniewski: | If they found anything, yes. |
| Co-Defendant's Counsel: | Thank you. |
| Prosecutor: | What was that last question, your last question. |
| Co-Defendant's Counsel: | The last question was that she — again, it is not voice dropping. The last question is that I'm sure that any evidence of anything of any evidentiary value that was found by the Detroit Police Department we are going to see at some point in this trial. |
| Prosecutor: | I'm going to object to those types of questions. I will prove the elements of this case beyond a reasonable doubt, and I will decide how to do that. *And, you know, if he wants to bring anything in, he can.* I object to that type of question. |
| Co-Defendant's Counsel: | The only comment would be that he's going to try to prove this case beyond a reasonable doubt. |
| The Court: | The objection is sustained. |

*People v. Fawaz*, No. 264703, 2007 WL 861104, at *2-3 (emphasis in original). The Michigan Court of Appeals held that the statement did not constitute prosecutorial misconduct:

A prosecutor is entitled to fairly respond to issues raised by a defendant. A review of the remark in context reveals that the prosecutor was responding to implications flowing from defendant Farraj's counsel's question to Officer Wisniewski. The prosecutor was not commenting on defendant's silence or attempting to shift the burden of disproving an element of the offense to defendant. In fact, the prosecutor stated that he would prove the elements of the case. Because the prosecutor's

comments did not burden defendant's right not to testify, or shift the burden of disproving an element of the offense to the defense, the challenged comments were not improper.

Moreover, to the extent that the challenged remarks could be viewed as improper, the trial court's instructions that defendant and Farraj did not have to offer any evidence or prove their innocence, that the prosecution was required to prove the elements of the crimes beyond a reasonable doubt, and that the jurors were not to allow the fact that defendants did not testify affect the verdict in any way, were sufficient to cure any possible prejudice.  Defendant has failed to show plain error affecting his substantial rights.

*Id.* at *3 (internal citations omitted).

"It is well established that a prosecutor's direct reference to a criminal defendant's failure to testify is a violation of that defendant's Fifth Amendment privilege against compelled self-incrimination."  *Byrd v. Collins*, 209 F.3d 486, 533 (citing *Griffin v. California*, 380 U.S. 609 (1965).  The petitioner does not contend here that the prosecutor made a direct reference to the fact that the petitioner did testify at trial.  However, indirect references to a defendant's failure to testify may also violate the Fifth Amendment privilege.  *Ibid.*  "'[A] reviewing court must look at all the surrounding circumstances in determining whether or not there has been a constitutional violation.'"  *Ibid.* (quoting *Butler v. Rose*, 686 F.2d 1163, 1170 (6th Cir. 1982) (en banc)).  The prosecutor's comment was unfortunate, but the Court cannot conclude that the Michigan Court of Appeals unreasonably applied federal law when it rejected the claim on direct appeal.

The Sixth Circuit has prescribed four factors to consider when assessing a claim of indirect comment on the right to silence: "1) Were the comments 'manifestly intended' to reflect on the accused's silence or of such a character that the jury would 'naturally and necessarily' take them as such; 2) were the remarks isolated or extensive; 3) was the evidence of guilt otherwise overwhelming; 4) what curative instructions were given and when."  *Bowling v. Parker*, 344 F.3d

-18-

487, 514 (6th Cir. 2003) (quoting *Lent v. Wells*, 861 F.2d 972, 975 (6th Cir. 1988)).   A court generally will not find a manifest intent to comment on a defendant's right to remain silent if some other explanation for the prosecutor's remarks is equally plausible, such as when a comment is a fair response to a claim made by the defendant or his counsel.   *See Gall v. Parker*, 231 F.3d 265, 311 (6th Cir. 2000).   The Sixth Circuit has held that "'[g]eneral references to evidence as uncontradicted, while not recommended, may not reflect on the defendant's failure to testify where witnesses other than the defendant could have contradicted the evidence.'"   *Byrd*, 209 F.3d at 534 (quoting *Raper v. Mintzes*, 706 F.2d 161, 164 (6th Cir. 1983)); *see also Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006).

The prosecutor's comments during closing argument cannot reasonably be construed as intended to reflect on the petitioner's silence or to "bait" the petitioner into testifying.   The prosecutor was merely laying out the state's theory of the case.   Nor were the prosecutor's comment during Officer Wisniewski's testimony unconstitutional.   The prosecutor's remark was explained plausibly as a response to defense counsel's repeated suggestion that the prosecutor would or should introduce certain evidence.   The remark therefore cannot be considered to have been "manifestly intended" to comment on the petitioner's silence or to goad the petitioner into testifying.   Habeas relief is denied on this claim.

## D.

Next, the petitioner argues that the trial court erred by denying his motion to quash the information because insufficient evidence was presented at the preliminary examination.

The Constitution does not require a probable cause hearing to be conducted prior to a criminal trial.   *See Gerstein v. Pugh*, 420 U.S. 103, 119, 125 n. 26 (1975).   An "illegal . . . detention

-19-

does not void a subsequent conviction." *Id.* at 119.  Therefore, a state court's decision to hold a person for trial does not implicate a federal constitutional right, especially when there is sufficient evidence of the crime presented at trial to satisfy the Due Process Clause.  The bind-over decision itself invokes a question of state law, which is not cognizable on habeas corpus review.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68, (1991); *Dorchy v. Jones*, 320 F.Supp.2d 564, 578-79 (E.D. Mich.2004) (denying habeas relief on petitioner's claim there was insufficient evidence to bind him over for trial).  Habeas relief is not warranted on this claim.

## E.

In his fifth claim for habeas corpus relief, the petitioner argues that the trial court erred when it denied his motion for a directed verdict.  The contention that the trial court erred by refusing to enter a directed verdict is a state law claim not cognizable on federal habeas review.  *King v. Trippett*, 27 F. App'x 506, 510 (6th Cir. 2001) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68, (1991)).  The petitioner's claim could be construed as a claim that the evidence was not sufficient to sustain his second-degree murder conviction.  However, the petitioner has not developed that argument.  The Michigan Court of Appeals found that the trial court did not err in denying the petitioner's motion for a directed verdict and that there was sufficient evidence to support the conviction.  *People v. Fawaz*, No. 264703, 2007 WL 861104, at *4-5.  The petitioner has not demonstrated that the state court's determination was contrary to or an unreasonable application of clearly established federal law.

## F.

The petitioner next argues that the trial court erred by allowing a forensic pathologist to testify about the cause of death because the pathologist's opinion was speculation and did not meet

the foundational requirements of Michigan Rule of Evidence 702.  The petitioner argues that admission of this testimony violated both *Daubert v. Merrell Dow Phamaceuticals, Inc.*, 509 U.S. 579 (1993) and Michigan Rule of Evidence 702.  The trial court held a hearing before trial to consider the admissibility of Dr. Werner Spitz's anticipated testimony on the cause of death.  The trial court found the testimony admissible.  The Michigan Court of Appeals determined that Dr. Spitz's testimony was admitted properly based on Dr. Spitz's lengthy educational and professional qualifications and his testimony that his conclusions were based upon a formula regarding blood loss and exsanguination that was accepted in the scientific community and that he had employed for over 52 years.

The petitioner's reliance on *Daubert* is misplaced.  "*Daubert* concerned the Federal Rules of Evidence which is not relevant to" the petitioner's conviction. *Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998).  Therefore, *Daubert* cannot provide a basis for habeas relief.

The petitioner also argues that the admission of the testimony violated Michigan Rule of Evidence 702.  That claim of error addresses a state evidentiary rule, which does not amount to a ground for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993).  Only where admission of the disputed evidence rendered the trial "so fundamentally unfair as to deprive the petitioner of due process" does it provide grounds for granting a writ of habeas corpus.  *Broom v. Mitchell*, 441 F.3d 392, 406 (6th Cir. 2006) (quoting *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004)).  "[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend [ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37,

-21-

43 (1996).  Even if some rule of evidence were violated, relief on collateral review will be granted "only when a trial error 'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Ford v. Curtis*, 277 F.3d 806, 809 (6th Cir. 2002) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).   The petitioner fails to show that the alleged evidentiary error rose to the level of a federal constitutional claim warranting relief.  Therefore, the state court's conclusion that no error occurred was objectively reasonable.

The petitioner also argues that the case against him was based almost entirely on circumstantial evidence, including evidence that carpeting had been removed from the co-defendant's vehicle.  The petitioner presents an affidavit from Mike Malek that states that another individual, Mohammed Hazime, told him that he removed the carpet in late October 2003 because it had gotten dirty after a hunting trip.  Even if the affidavit were true, it does nothing to undermine the testimony of Dr. Spitz or to cast doubt on the petitioner's conviction.  Malek had no personal knowledge of the alleged hunting trip, and can merely report the explanation that another individual gave him for the soiled carpet in the vehicle.  The affidavit does not demonstrate, for example, that the carpet was removed prior to Al-Farah's disappearance.  The affidavit does not provide grounds for habeas corpus relief.

## G.

The petitioner argues that his sentence was improperly based upon facts not admitted by him or determined by the jury.  The petitioner believes that *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), support his position.  However, the claim that Michigan's sentencing guideline system, wherein judge-found facts are used to establish the

minimum sentence of an indeterminate sentence, violates the Sixth Amendment, has been foreclosed by the Sixth Circuit's decision in *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) ("[The petitioner] argues that the Michigan trial judge violated *Apprendi* by finding facts that raised his minimum sentence.  But *Harris v. United States* tells us that *Apprendi*'s rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum."); *see also Montes v. Trombley*, 599 F.3d 490, 495 (6th Cir. 2010) (the *Blakely-Apprendi* rule requiring any fact that increases the penalty for a crime beyond the prescribed statutory maximum to be submitted to a jury and proved beyond a reasonable doubt does not apply to laws that set the maximum sentence by statute but that permit a judge to determine the minimum sentence through judicial factfinding, and does not preclude a judge from utilizing the preponderance-of-the-evidence standard when finding facts related to sentencing).  This Court is bound by the Sixth Circuit's decisions.  Under Michigan law, the maximum sentence for second-degree murder is life imprisonment.  Mich. Comp. Laws § 750.317.  Because the petitioner's sentence fell within the statutorily-authorized maximum penalty of life imprisonment, which was not enhanced by judicial factfinding, no Sixth Amendment violation occurred.  The petitioner has failed to state a claim upon which federal habeas relief may be granted as to this issue.

## H.

The petitioner next raises several claims of ineffective assistance of trial counsel.  He argues that counsel was ineffective by failing to: (1) timely file a notice of alibi and raise an alibi defense; (2) investigate and call known alibi witnesses; (3) object to jury instructions which did not allow the jury to find the petitioner not guilty of second-degree murder; (4) object to the testimony of Osama

-23-

Al-Farah; (5) object to the testimony of Detective McMullen; and (5) object to the rebuttal testimony of Detective McMullen.

The two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs the Court's analysis of ineffective-assistance-of-counsel claims. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To establish ineffective assistance of counsel "a defendant must show both deficient performance and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *see also Premo v. Moore*, --- U.S. ---, ---, 131 S.Ct. 733, 739 (2011).

Because of the high deference accorded state court determinations by the AEDPA, establishing that counsel was ineffective, and therefore the petitioner was denied his right to counsel under the Sixth Amendment, is difficult. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, ---, 130 S.Ct. 1473, 1485 (2010). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington*, 131 S.Ct. at 788 (internal citations omitted).

On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Knowles*, 556 U.S. at 123 (quoting *Schriro v.*

-24-

*Landrigan*, 550 U.S. 465, 473 (2007)).  Moreover, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Ibid*. (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The petitioner's first and second ineffective assistance of trial counsel claims concern counsel's failure to file timely and properly raise an alibi defense.  He argues that counsel should have called Heather Gladson to testify because she would have established that he was not present during the murder.  In support of his argument, the petitioner cites Gladson's affidavit stating that she was with the petitioner from approximately 10:00 p.m. on October 16, 2003, until 6:30 a.m., on October 17, 2003.  The trial court considered this argument in deciding the petitioner's motion for relief from judgment and concluded that any error was harmless:

> From the time Gladson last saw defendant, he would have had plenty of time (almost three hours) to drive from Dearborn to Sterling Heights, murder Raed Al-Farah in the office and remove the body before Rayes arrived.  Hence, Gladson could not have provided defendant with a conclusive alibi.  Therefore, any error in trial counsel's failure to preserve and present an alibi defense based on Gladson's time together with defendant could only have been harmless.

*People v. Fawaz*, No. 2004-0439-FC, slip op. at 3 (Macomb Cnty. Cir. Ct. Nov. 13, 2008).

The state court's decision reasonably applied federal constitutional law.  It is true that defense counsel failed to perform consistently with professional norms by failing to present an alibi defense, and that failure to call a known alibi witness generally constitutes deficient performance by counsel.  *Stadler v. Curtin*, 682 F. Supp. 2d 807, 826 (E.D. Mich. 2010) (observing that "a 'decision . . . cannot be accorded the normal deference to strategic choices [where] it was uninformed'") (quoting *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006))); *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). However, to warrant habeas relief, the petitioner must establish both deficient performance and prejudice.  As the Supreme Court has made clear, demonstrating

-25-

prejudice is not an easy task.  The Supreme Court has emphasized the point that satisfying *Strickland*'s prejudice prong "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen*, 131 S.Ct. at 1403 (citing *Harrington*, 131 S .Ct. at 791).  The state court concluded that the petitioner's proposed alibi witnesses would not have changed the result of the case, and given the deference afforded to the state court, this Court cannot conclude that the decision was unreasonable.  The petitioner's proposed alibi witness could not provide the petitioner with a complete alibi for the night in question, as the state court found.  The resulting conclusion that the petitioner suffered no prejudice from the failure to call her as an alibi witness is reasonable.  *See Wolfe v. Bock*, 253 F. App'x 526, 531 (6th Cir. 2007).  The question is a close one, but nearly three hours would have remained unaccounted for had Gladson testified.  Her testimony no doubt would have helped the petitioner because the jury could have found that he had far less time to kill the victim and dispose of the body.  But reasonable jurists could differ on the value of Gladson's testimony, which places this issue beyond the territory of habeas relief.  *Harrington*, 131 S. Ct. at 785-86.

Next, the petitioner argues that counsel was ineffective by failing to object to the jury instructions and verdict form because they did not allow the jury to return a not-guilty verdict generally, or specifically on the lesser included offense of second-degree murder.  The trial court denied this claim on collateral review, stating:

> [T]he jury was instructed that the prosecutor had to prove every element of a charged crime before a defendant could be found guilty.  The jury was also instructed that "if" they found a defendant guilty of murder, they must indicate whether it was murder in the first or second degree.  Significantly, the jury was clearly told they could "return a verdict of guilty of one or more of the alleged crimes, guilty of a less serious crime *or not guilty*."  Hence, contrary to defendant's argument, the jury instruction did NOT compel a directed verdict of guilty with respect to the crime of second-degree murder.

*People v. Fawaz*, No. 2004-0439, slip op. at 5 (Macomb Cnty. Cir. Ct. Nov. 13, 2008) (citations; emphasis supplied by trial court). In addition, the state court found that the verdict form allowed the jury to find the petitioner not guilty of either first- or second-degree murder or not guilty of both. The court concluded that "neither the jury instructions nor the verdict form had the effect of precluding the jury from rendering a not guilty verdict to the lesser included offense of second-degree murder or a general verdict of not guilty to both first- and second-degree murder." *Ibid*.

This Court has reviewed the jury instructions and agrees with the trial court's assessment. The jury clearly was informed that it could find the petitioner not guilty of either or both of those crimes. Nothing in the record before the Court provides a basis on which counsel could have or should have objected to the challenged instructions. The petitioner's trial counsel was not ineffective by failing to raise a meritless objection.

The petitioner next argues that counsel was ineffective by failing to object to improper testimony from Osama Al-Farah and Detective McMullen. Osama Al-Farah testified about the activities of a private investigator he hired to search for Raed Al-Farah. Osama Al-Farah testified that every lead was pursued in hopes that Raed would be found alive. The prosecutor asked him what happened when these leads were followed. Osama Al-Farah responded, "He's not there. Just basically it's a lie, he's not there. Every lead we follow it. We did follow leads until 3:00, 4:00 in the morning." Trial Tr., June 3, 2005 at 20. The petitioner argues that allowing Osama to give that testimony was improper and counsel should have objected. The state court held that with or without the disputed testimony, the jury would have known that Osama Al-Farah believed Raed to be dead and the reported sightings of him mistaken. The state court concluded, therefore, that the testimony was not prejudicial to the petitioner. The state court's conclusion is not contrary to or an

unreasonable application of *Strickland*.  Osama Al-Farah testified that the leads were all false ones.

No logical leap was required to conclude that Osama considered those leads, therefore, to be lies.

No prejudice to the petitioner resulted from Osama Al-Farah's testimony.

The petitioner also argues that counsel was ineffective by failing to object to testimony from

Sterling Heights police detective Thomas McMullen regarding Raed Al-Farah's voicemail greeting.

Osama Al-Farah informed Detective McMullen that Raed's voicemail greeting changed sometime

after Raed went missing.  In response to a prosecutor's question, Detective McMullen testified that

he did not contact the cell phone provider to determine how such a change may have occurred

because, in Detective McMullen's experience with his own phones, several outgoing messages may

be saved to the phone at the same time and Detective McMullen believed Osama may have

inadvertently changed the greeting when attempting to retrieve Raed's voicemail.  The petitioner's

defense attorney objected to this testimony.  The trial court found it admissible because it focused

on the course of the investigation and why officers pursued certain avenues and not others.  The

prosecutor continued to question Detective McMullen regarding the changed voicemail message and

the possibility that Osama may have changed it.  Defense counsel renewed his objection and the trial

court sustained the objection.  Thus, the petitioner's claim that counsel failed to object is not

supported by the record.

The petitioner also argues that counsel was ineffective by failing to object to Detective

McMullen's rebuttal testimony about Rasheb Bazzy's sighting of Raed some time after the alleged

murder date.  Bazzy denied telling Detective McMullen prior to trial that he could not be certain that

the man he saw was Raed.  Detective McMullen testified, on rebuttal, that Bazzy had told him he

could not be certain that the man he saw was Raed.  In ruling on the post-conviction motion, the trial

-28-

court held that the rebuttal testimony was properly admitted.  Defense counsel, therefore, was not ineffective for failing to object to admissible testimony, and the Court must deny habeas relief on that claim.

I.

Finally, the petitioner argues that his procedural default was excused by the ineffective assistance of his appellate counsel.  As discussed, the Court determined that the interests of judicial economy are best served by addressing the merits of the petitioner's allegedly defaulted claims. Nevertheless, the Court will briefly address the petitioner's ineffective assistance of appellate counsel claim.

The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To prevail on a claim of ineffective assistance of appellate counsel, the petitioner must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal.  *Strickland*, 466 U.S. at 687. The Supreme Court has made clear that a criminal defendant has no constitutional right to demand that appellate counsel raise every possible colorable issue on appeal.  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-52).  Appellate counsel need not raise every nonfrivolous issue, but he must exercise reasonable professional judgment. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (citing *Jones*, 463 U.S. at 751-53).

-29-

A petitioner is prejudiced by appellate counsel's deficient performance if a reasonable probability exists that, but for counsel's deficient performance, he would have prevailed on appeal. *Riley v. Jones*, 476 F. Supp. 2d 696, 709 (E.D. Mich. 2007); *see also Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich.2003) (appellate counsel may prejudice a defendant by omitting a "dead-bang winner," an issue obvious from the trial record that would have resulted in reversal on appeal). The petitioner has not shown that by omitting the claims presented in his motion for relief from judgment or by failing to "federalize" the claims in his direct appeal, appellate counsel's performance fell outside the wide range of professional norms. Appellate counsel presented claims on direct appeal based on the admission of the mortgage fraud evidence, the second-degree murder jury instructions, the prosecutor's comments during trial, the trial court's denial of the petitioners' motions to quash and for a directed verdict, and Dr. Spitz's testimony. The petitioner has not shown that appellate counsel's strategy in presenting those claims and not raising the claims contained in the motion for relief from judgment was deficient or unreasonable; nor has the petitioner demonstrated that the failure to raise those issues as specifically federal issues was deficient or unreasonable because there is no suggestion that federalizing those claims would have made a difference to the outcome of the direct appeal. Moreover, because the Court has determined that the foregoing claims lack merit, the petitioner cannot establish that he was prejudiced by appellate counsel's performance. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit,'" and there is no reasonable probability that, but for appellate counsel's failure to raise the claims, the petitioner would have prevailed on appeal. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). The petitioner has not established that appellate counsel was ineffective, and the state court's

adjudication of the petitioner's claim was not contrary to or an unreasonable application of *Strickland*.  Habeas relief is not warranted on this claim.

III.

The state courts' decisions in this case were not contrary to federal law, an unreasonable interpretation of federal law, or an unreasonable determination of the facts of the case.  The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: April 5, 2013

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 5, 2013.

s/Deborah R. Tofil
DEBORAH R. TOFIL

---